**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Lejon ROBINS, aka: Edwin Price,**
**Jr., Defendant–Appellant.**

**No. 91–50286.**

United States Court of Appeals,
Ninth Circuit.

Submitted April 6, 1992.*

Decided June 24, 1992.

David S. McClane, Deputy Federal Public Defender, Los Angeles, Cal., for defendant-appellant.

Lawrence S. Middleton, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before PREGERSON, D.W. NELSON and THOMPSON, Circuit Judges.

---

* The panel unanimously finds this case suitable for disposition without oral argument. Fed. R.App.P. 34(a); 9th Cir.R. 34–4.

DAVID R. THOMPSON, Circuit Judge:

Defendant Lejon Robins pleaded guilty to one count of possession with intent to distribute phencyclidine ("PCP"), in violation of 21 U.S.C. § 841(a)(1). In addition to PCP, at the time of his arrest Robins possessed two brick-shaped packages containing 2,779 grams of cornmeal and one-tenth of a gram of cocaine. At sentencing, the district court considered the cornmeal and cocaine to be a "mixture" containing a controlled substance under section 2D1.1(c) n. * of the Sentencing Guidelines. The court included the weight of the cornmeal and the cocaine in calculating Robins's sentence, and sentenced him to five years imprisonment.

Robins appeals his sentence. We vacate his sentence because we hold that it was error for the district court to conclude that the combination of cornmeal and cocaine was a "mixture" under Guideline section 2D1.1(c) n. *. We remand for resentencing.

## DISCUSSION

The facts of this case are undisputed. On July 3, 1990, Marvin Brown and a confidential informant went to a motel in Oklahoma City, Oklahoma, to buy cocaine from the defendant Robins and his codefendant Harold Carr. Robins and Carr gave Brown a brick-shaped package wrapped in duct tape which purportedly contained approximately one kilogram of cocaine.

Brown took the brick to the confidential informant who was waiting outside the motel room. The confidential informant punched holes in the brick with his car keys to sample its contents. He determined the cocaine was of poor quality and told Brown to take it back. Brown did so, and when he left the motel he was arrested. The police then entered the motel room and arrested Robins and Carr. Inside the room the officers found 65 milliliters of a substance containing a detectable amount of PCP. They also seized two bricks of what they suspected to be kilogram packages of cocaine.

A laboratory analysis revealed that the two packages contained approximately one-tenth of a gram of cocaine and 2,779 grams of cornmeal. The cocaine was located near V-shaped cuts in the tops of the packages.

After his arrest, Robins stated:

I purchased the cornmeal because it came in a plastic bag, shaped like a brick of cocaine. I wrapped the cornmeal plastic bag in duct tape, a quarter inch thick. I then made V-shaped cuts in both bricks containing cornmeal, taking care not to puncher [sic] the plastic containing the cornmeal. I then poured in the cocaine I had into both V-shaped cuts.

Robins was charged with conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C. § 846; possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1); possession with intent to distribute PCP, in violation of 21 U.S.C. § 841(a)(1); and leasing a room for the purpose of storing and distributing controlled substances, in violation of 21 U.S.C. § 856(a)(2). He pleaded guilty to count three of the indictment, possession with intent to distribute PCP, in return for the government's promise to dismiss the remaining counts and recommend a two-point downward adjustment for acceptance of responsibility. The district court accepted this plea agreement.

In sentencing Robins, the district court included the weight of the 2,779 grams of cornmeal and the one-tenth of a gram of cocaine found in the two packages, as well as the weight of the cocaine equivalent (325 grams) of the 65 milliliters of PCP found in the motel. Because this combined weight exceeded two kilograms, but was less than 3.5 kilograms, Robins's base offense level was set at 28. *See* U.S.S.G. § 2D1.1(c)(8) (Nov. 1989).

Robins contends the court should not have included the weight of the cornmeal in its sentencing calculation. He argues the government failed to prove that the one-tenth of a gram of cocaine was mixed with the 2,779 grams of cornmeal.

Although a chemist's report stated that the cocaine was present in the bricks only where the V-shaped cutmarks were located, this evidence was not inconsistent with the district court's finding that the cocaine was "stirred into the cornmeal" in this area of the packages. Thus, to this extent, the cocaine was mixed with the cornmeal.

But this does not answer the question whether the combination of cocaine and cornmeal constituted a "mixture or substance" under section 2D1.1 of the Guidelines, a legal issue we consider de novo. *United States v. Wilson*, 900 F.2d 1350, 1355 (9th Cir.1990).

Section 2D1.1 provides that "[u]nless otherwise specified, the weight of a controlled substance set forth in the [drug quantity] table refers to the entire weight of any mixture or substance containing a detectable amount of the controlled substance." U.S.S.G. § 2D1.1(c) n. * (Nov. 1989). Although the words "mixture or substance" are given "the same meaning as in 21 U.S.C. § 841," *id.* at comment. (n. 1), neither section defines these terms.

The Supreme Court focused on the meaning of "mixture or substance" in *Chapman v. United States*, — U.S. ——, 111 S.Ct. 1919, 114 L.Ed.2d 524 (1991). In *Chapman*, the defendants were convicted of selling blotter paper containing LSD, in violation of 21 U.S.C. § 841(a). The Court held that "blotter paper customarily used to distribute LSD, is a 'mixture or substance containing a detectable amount' of LSD." *Id.* 111 S.Ct. at 1925. It determined that "[n]either the statute nor the Sentencing Guidelines define the terms 'mixture' and 'substance,' nor do they have any established common law meaning. Those terms, therefore, must be given their ordinary meaning." *Id.* The Court reasoned that under the plain, dictionary meaning of the term "mixture," the blotter paper would.be part of the LSD mixture because, "[l]ike heroin or cocaine mixed with cutting agents, the LSD cannot be distinguished from the blotter paper, nor easily separated from it." *Id.* at 1926.

In considering legislative intent, the Court in *Chapman* concluded it was rational for Congress to set penalties based on the weight of blotter paper because "[i]t is a tool of the trade for those who traffic in the drug," that "makes LSD easier to transport, store, conceal, and sell." *Id.* at 1928. The Court emphasized Congress' intent to punish more severely those who distribute large volumes of drugs by increasing the amount of diluents in them. *See id.* at 1927–28. "This is because they are responsible for more of the noxious substance reaching the streets, albeit in diluted form." *United States v. Acosta*, 963 F.2d 551, 554 (2d Cir.1992).

In the present case, using a dictionary meaning, the cornmeal and cocaine could constitute a "mixture" because the combination consists of two commingled substances not easily separated. *Chapman*, 111 S.Ct. at 1926. However, because cornmeal is yellow and cocaine is white the two substances are easily distinguished. *Cf. id.* Moreover, unlike the blotter paper in *Chapman*, which the Court characterized as a "tool of the trade" that facilitated distribution of the LSD, *id.* at 1928, the cornmeal in the present case is not a tool of the trade. Robins presented undisputed expert testimony by a forensic toxicologist that cornmeal is not a carrier medium or cutting agent used with cocaine. Furthermore, the cornmeal did not facilitate the distribution of the cocaine. To the contrary, it had to be hidden by duct tape from the view of a prospective buyer.

The cornmeal also had to be separated from the cocaine before the cocaine could be effectively used. The cornmeal was thus the functional equivalent of packaging material, which the Court in *Chapman* recognized was not to be included in the weight calculation. *See id.* at 1926; *see also Acosta*, at 554 (creme liqueur is the functional equivalent of packaging material because it must be separated from the cocaine before the cocaine may be effectively used, and its weight should not have been included in calculating defendant's sentence under guidelines section 2D1.1).

*United States v. Beltran–Felix*, 934 F.2d 1075 (9th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 955, 117 L.Ed.2d 123 (1992), is not to the contrary. There the defendant pleaded guilty to possession with intent to distribute approximately 29 grams of methamphetamine which the defendant intended to render from 192 grams of chemicals he was cooking at the time he was arrested. He argued the court should not have included the full weight of the 192–gram solution in calculating his sentence because only the 29 grams of methamphetamine he intended to produce from the mixture would have been distributable. *Id.* at 1076. We rejected this argument stating that the "[d]efendant, with his 192 gram amphetamine solution, falls within the statute's terms. And we do not find any language in the legislative history that requires us to read the phrase 'a mixture or substance' to mean 'a [readily marketable] mixture or substance.'" *Id.*

In *Beltran–Felix*, there was no question that the 192–gram solution facilitated the distribution of the methamphetamine. The methamphetamine could not have been produced without it. It was unnecessary for us to consider anything other than the defendant's marketable mixture argument, and we resolved the sentencing issue by rejecting that argument. *Cf. United States v. Jennings*, 945 F.2d 129, 137 (6th Cir.1991).

Both Robins and the government rely on *United States v. Chan Yu–Chong*, 920 F.2d 594 (9th Cir.1990), a pre-*Chapman* case. There, three defendants were sentenced based upon the total weight of material they delivered. The material consisted of 82.4 grams of lumps of heroin with an average purity of 74 percent and 1920 grams of an unidentified substance, possibly talcum powder. *Id.* at 596.

We held that the material was a "mixture or substance" within the meaning of 21 U.S.C. § 841(b) for three reasons. First, "[a] combination of a diluent agent and a drug sold in diluted form is a mixture or substance within the meaning of [section] 841(b)." *Id.* at 597. Next, "the seized substance was a drug product moving through the chain of distribution in the manner envisioned by Congress." *Id.* Fi-

nally, the defendant had not argued, and there was no evidence in the record to suggest, "that the unidentified substance was not consumable by the ultimate user, e.g., that it was poisonous or that it would not dissolve as necessary for its ultimate injection." *Id.*

Although cornmeal is consumable, *Chan Yu–Chong* is distinguishable. In a typical case, diluting cocaine with some other substance increases the amount of the drug available to sell to consumers and it is appropriate, therefore, to impose punishment for the entire weight of the mixture. *Cf. Jennings*, 945 F.2d at 137. Here, however, it cannot reasonably be argued that Robins used the cornmeal to dilute the cocaine because the undisputed facts show that the sole purpose of the cocaine was to mask the identity of the cornmeal. Robins intended to pass off the cornmeal as cocaine by salting the mine in the area of the V-shaped cuts. Under these circumstances, the combination of 2,779 grams of cornmeal and one-tenth of a gram of cocaine did not constitute "a drug product moving through the chain of distribution in the manner envisioned by Congress." *Chan Yu–Chong*, 920 F.2d at 597; *see also United States v. Rolande–Gabriel*, 938 F.2d 1231, 1237 (11th Cir.1991) (unusable waste material should not be used in calculating sentence because it did not facilitate the use, marketing or access of the drug).

In *United States v. Restrepo–Contreras*, 942 F.2d 96, 99 (1st Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 955, 117 L.Ed.2d 123 (1992), the weight of beeswax in statues in which the cocaine had been mixed with the beeswax was included in calculating the defendant's sentence under section 2D1.1(c). In *United States v. Mahecha–Onofre*, 936 F.2d 623, 626 (1st Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 648, 116 L.Ed.2d 665 (1991), the weight of acrylic suitcase material chemically bonded with 2.5 kilograms of cocaine was included in calculating the defendant's sentence under section 2D1.1(c). Whether or not we agree with the First Circuit's analysis in *Restrepo–Contreras* and *Mahecha–Onofre*, a question we do not decide, neither of those cases is inconsistent with our holding in this case. In both *Restrepo–Contreras*

and *Mahecha–Onofre* the beeswax and the acrylic suitcase material were used to facilitate distribution of the cocaine. Here, the cornmeal was not used to facilitate distribution of the one-tenth of a gram of cocaine. The cornmeal was used to trick a purchaser into buying cornmeal thinking it was cocaine.

## CONCLUSION

The district court erred in including the weight of the cornmeal in calculating Robins's sentence. The combination of cornmeal and cocaine did not constitute a "mixture" under section 2D1.1 of the Sentencing Guidelines. Because we vacate Robins's sentence on this ground, we do not reach Robins's alternative argument that the district court incorrectly enhanced his base offense level by relying on the amount of drugs covered by counts dropped pursuant to the plea agreement. *Cf. United States v. Fine*, 946 F.2d 650 (9th Cir.1991), *reh'g granted*, 963 F.2d 1258 (1992).

Sentence VACATED. Case REMANDED for resentencing.