**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Patrick INNIE, Defendant–Appellant.**

No. 92–50239.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 8, 1993.

Decided Oct. 5, 1993.

---

Francis J. James, Deputy Federal Public Defender, Los Angeles, CA, for defendant-appellant.

Rob B. Villeza, Asst. U.S. Atty., Los Angeles, CA, for plaintiff-appellee.

Appeal from the United States District Court for the Central District of California.

Before: WALLACE, Chief Judge, O'SCANNLAIN and FERNANDEZ, Circuit Judges.

O'SCANNLAIN, Circuit Judge:

We must decide whether a sentencing court may determine a convicted defendant's offense level based upon the total volume of a liquid mixture containing methamphetamine and whether being an accessory after the fact to murder for hire is a crime of violence under the 1989 Sentencing Guidelines.

## I

In 1988, Patrick Innie failed to appear for sentencing after pleading guilty to being an accessory after the fact to the commission of murder for hire in violation of 18 U.S.C. § 3. A warrant was issued for his arrest.

On February 16, 1989, Innie was arrested by the Culver City Police in the parking lot of the West End Gardens Motel in Culver City, California. After his arrest, Innie consented to an interview with federal marshals. Upon being advised of his *Miranda* rights, Innie told the marshals that he was using his brother's name, that he was staying in room 4 at the motel, that he was driving a 1977 Cadillac, and that he was supporting himself by "cooking meth." He said that there was a black bag with two guns in it by the bed in his motel room. Innie told the marshals that the barrel of one of the guns had been converted from a 10 millimeter to a .45 caliber and that the other gun was a small semiautomatic. He said that there would be methamphetamine in the refrigerator. Innie admitted, in addition, that there was a case in the trunk of the Cadillac which contained a sighting scope and a 10 millimeter gun barrel. Innie also told the marshals that there would be a woman in the room, that he had met her in Las Vegas about a week before, that she only knew him as "Mike" and that she knew nothing about the guns or the drugs.

After receiving Innie's consent, law enforcement officers searched the motel room and the Cadillac. The room was registered to "Clifford Innie (or Winnie)." In the motel room, by the bed, the officers found a black bag containing the guns Innie had described. In the refrigerator and freezer, they found five quart-size glass bottles containing liquid methamphetamine and a glass bottle containing acetone. They also found a serrated spatula, razor blades, litmus paper, a heat lamp, two hot plates, a propane tank, a device for sealing bags, a glass beaker, glass baking dishes, a plastic funnel, and small amounts of marijuana and methamphetamine. In the trunk of the Cadillac, the

officers found a tool box containing a sighting scope for a gun and numerous rounds of ammunition. A digital scale was also found in the trunk of the car. In addition, the record indicates that a woman from Las Vegas was in the motel room at the time of the search.

Innie was convicted, after a jury trial, of possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1) (Count One); use of and carrying a firearm during a drug-trafficking crime in violation of 18 U.S.C. § 924(c) (Count Two); being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) (Count Three); and being a fugitive in possession of a firearm in violation of 18 U.S.C. § 922(g)(2) (Count Four). He was sentenced to a total of 420 months in prison.

## II

Innie contends that the evidence was insufficient to convict him of possession of methamphetamine with the intent to distribute.[1] "We review the sufficiency of evidence to support a criminal conviction by viewing the evidence in the light most favorable to the prosecution and determining whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Garza,* 980 F.2d 546, 552 (9th Cir.1992) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)). "When reviewing the sufficiency of the evidence, we must 'assume that the jury resolved all ... matters in a manner which supports the verdict.'" *Id.* (citation omitted).

▮ The crime of possession with the intent to distribute methamphetamine has three essential elements. *See United States v. Ocampo,* 937 F.2d 485, 488 (9th Cir.1991). The government must prove beyond a reasonable doubt that the defendant (1) knowingly, (2) possessed the methamphetamine, (3) with an intent to distribute it. *See id.;*

*United States v. Penagos,* 823 F.2d 346, 350 (9th Cir.1987).

▮ Innie concedes that the evidence was sufficient to show possession. Indeed, he argued before the district court and again in his brief that the evidence *was* sufficient to convict him of manufacturing methamphetamine in violation of 21 U.S.C. § 841(a)(1). In any event, the evidence compels his concession. A reasonable jury could readily find, beyond any doubt, that Innie knowingly possessed the methamphetamine. *See United States v. Hernandez,* 876 F.2d 774, 778 (9th Cir.), *cert. denied,* 493 U.S. 863, 110 S.Ct. 179, 107 L.Ed.2d 135 (1989); *United States v. Castillo,* 866 F.2d 1071, 1088 (9th Cir.1988).

▮ Innie argues, however, that the evidence was insufficient to show intent to distribute. His argument is unavailing. The lone case cited by Innie as support for his argument, *United States v. Solis,* 841 F.2d 307, 309 (9th Cir.1988) (where indictment charged defendant with manufacturing, instruction that jury could convict for possession constituted fatal variance), is inapposite. Moreover, the evidence is more than sufficient to demonstrate that Innie intended to distribute the drug. A jury may infer the intent to distribute a controlled substance from quantity alone. *United States v. Smith,* 832 F.2d 1167, 1170 (9th Cir.1987). Innie possessed 3388 grams of methamphetamine, enough to produce 33,880 doses. Moreover, "[i]t may reasonably be inferred that an armed possessor of drugs has something more in mind than mere personal use." *United States v. Tarazon,* 989 F.2d 1045, 1053 (9th Cir.1993) (quoting *United States v. Savinovich,* 845 F.2d 834, 837 (9th Cir.), *cert. denied,* 488 U.S. 943, 109 S.Ct. 369, 102 L.Ed.2d 358 (1988)). Innie had two guns in his possession. Intent to distribute may also be inferred from the presence of packaging materials. *United States v. Martinez,* 967 F.2d 1343, 1345 (9th Cir.1992). Officers found a digital scale in the Cadillac and a

---

1. Innie evidences some confusion by framing his sufficiency of the evidence challenge as a sentencing issue. In fact, as the government points out, the district court refused Innie's motion for entry of judgment of acquittal under Fed. R.Crim.P. 29 after the government rested and again at the end of trial. Therefore, Innie has properly raised a sufficiency of the evidence claim.

device for sealing bags in the motel room. Finally, and most fundamentally, during his interview Innie admitted to the marshals, that he was supporting himself by "cooking meth."

Thus, a rational trier of fact could readily find all the essential elements of 21 U.S.C. § 841(a)(1) beyond a reasonable doubt.

## III

■ Innie contends that the district court erred by calculating the base offense level for Count One based upon the entire amount of the liquid mixture containing methamphetamine, rather than the consumable portion, because, at the time of his arrest, "the substance would hardly be marketable or of any consumable quantity." The liquid methamphetamine mixture found in the motel room was four to eight percent pure.

The plain language of the Guidelines clearly requires that "if any mixture of a compound contains any detectable amount of a controlled substance, the entire amount of the mixture or compound shall be considered in measuring the quantity." U.S.S.G. § 2D1.1 n.* (1988). Moreover, this court has rejected the contention that it is error, in applying the statutorily mandated minimum sentence, for a district court to use the entire weight of a methamphetamine solution that was not yet readily marketable. *United States v. Beltran–Felix,* 934 F.2d 1075, 1076–77 (9th Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 955, 117 L.Ed.2d 123 (1992). Innie argues, however, that we should reconsider both the plain language of the Guidelines and *Beltran–Felix* in light of the Supreme Court's decision in *Chapman v. United States,* — U.S. —, 111 S.Ct. 1919, 114 L.Ed.2d 524 (1991).

In *Chapman,* the Supreme Court held that the "blotter paper customarily used to distribute LSD[] is a 'mixture or substance containing a detectable amount' of LSD" under 21 U.S.C. § 841. *Id.* at —, 111 S.Ct. at 1925. In reaching that conclusion, the Court noted that

Congress adopted a "market-oriented" approach to punishing drug trafficking, under which the total quantity of what is distributed, rather than the amount of pure drug involved, is used to determine the length of the sentence. To implement that principle, Congress set mandatory minimum sentences corresponding to the weight of a "mixture or substance containing a detectable amount of" the various controlled substances. . . . It intended the penalties for drug trafficking to be graduated according to the weight of the drugs in whatever form they [are] found—cut or uncut, pure or impure, ready for wholesale or ready for distribution at the retail level.

*Id.* at —, 111 S.Ct. at 1925 (citations omitted). Therefore, the Court concluded that the plain dictionary meaning should be given to the term "mixture." *Id.* at —, 111 S.Ct. at 1926. Innie contends, however, that it is irrational to apply the plain language of the Guidelines in this case because to do so would be to create the kind of sentencing disparity that the Guidelines were designed to avoid.

Innie argues that sentencing him based upon the entire amount of the mixture is irrational (1) because had the manufacturing process been allowed to progress to completion, a much smaller amount of pure methamphetamine would have actually been produced and (2) because the mixture, in the form in which it was found, contained only a small amount of methamphetamine along with unreacted chemicals and by-products both of which are poisonous if ingested. The Sixth Circuit found this argument to be persuasive in *United States v. Jennings,* 945 F.2d 129 (6th Cir.1991).

In *Jennings,* the Sixth Circuit held that the legislative intent underlying the sentencing scheme of both 21 U.S.C. § 841 and the Sentencing Guidelines compels limiting the amount of methamphetamine to the amount that the defendant was capable of producing. *Id.* at 137. The *Jennings* court distinguished *Chapman* on the grounds that a dilutant, cutting agent, or carrier medium increases the amount of drug that a defendant has available to sell and it is therefore appropriate to subject the defendant to punishment for the entire weight of the mixture. *Id.* The court stated that

[i]f the [container] contained only a small amount of methamphetamine mixed together with poisonous unreacted chemicals and by-products, there would have been no possibility that the mixture could be distributed to consumers. At this stage of the manufacturing process, the defendants were not attempting to increase the amount of methamphetamine they had available to sell by adding a dilutant, cutting agent, or carrier medium, but rather were attempting to distill methamphetamine from the otherwise uningestable by-products of its manufacture.

*Id.* Thus, the *Jennings* court concluded that it was both illogical and contrary to the legislative intent to hold the defendants punishable for the entire weight of the mixture when they could have neither produced that amount of methamphetamine nor distributed the mixture containing the methamphetamine. *Id.* at 136. The court remanded the case to the district court for an evidentiary hearing to determine the chemical properties of the mixture.

Innie's argument that the entire amount of the mixture cannot be considered because it was not ready for distribution at either the wholesale or retail level finds further support in *United States v. Acosta,* 963 F.2d 551, 554–55 (2d Cir.1992) (cocaine dissolved in creme liqueur for importing) ("under a market-oriented approach, when the mixture is not ingestible (and therefore not marketable), there is no reason to base a sentence on the entire weight of a useless mixture"), and *United States v. Rolande–Gabriel,* 938 F.2d 1231, 1237 (11th Cir.1991) (irrational to consider entire weight of cocaine mixture that was obviously unusable while mixed with liquid waste material). Those cases interpret *Chapman* as standing for the proposition that it is rational to include the entire weight of a mixture only where that mixture is *usable* in the chain of distribution. Waste material that is "easily distinguished from, and separated from," the ingestible portion of the drug should not be considered. *See id.*

In a passing comment, a previous panel of this court appears to have rejected the Sixth Circuit's *Jennings* opinion and reaffirmed *Beltran–Felix. See United States v. Robins,* 967 F.2d 1387, 1390 (9th Cir.1992) (error to include weight of cornmeal to determine quantity of cocaine). The *Robins* court followed *Acosta* and *Rolande–Gabriel,* applying the principle that easily separated and distinguishable substances do not constitute a mixture or solution where the purpose of mixing the substances is to mask the drug rather than to facilitate distribution. *Id.* at 1389–90. However, the *Robins* court suggested that a liquid mixture containing methamphetamine was different than cocaine mixed with a readily separable packaging agent like cornmeal because the entire liquid mixture was necessary for the production of the methamphetamine. *Id.*

The government points out that this circuit has continued to apply the plain language of the statute and the Guidelines in methamphetamine cases decided subsequent to *Chapman. See, e.g., United States v. Bressette,* 947 F.2d 1361 (9th Cir.1991). In *Bressette,* this court rejected the appellant's contention that the amended version of the footnote to section 2D1.1 was inconsistent with the purposes of the Guidelines.[2] We refused to determine the appellant's sentence by the weight of the mixture, rather than by the amount of the pure methamphetamine contained in the mixture, because "[t]he footnote is perfectly clear and consistent on its face and to interpret it we need not go beyond the words themselves." *Id.* at 1362.

Other courts have refused to follow the Sixth Circuit's *Jennings* opinion in methamphetamine cases. In *United States v. Walker,* 960 F.2d 409, 412 (5th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 443, 121 L.Ed.2d 362 (1992), the Fifth Circuit rejected the assertion that *Chapman* effectively overruled that circuit's precedent requiring use of the total weight of a liquid substance containing methamphetamine in calculating a defendant's base offense level under section 2D1.1,

---

**2.** The footnote to § 2D1.1 was amended in 1989 to specifically provide that to determine the offense level in the case of a mixture or substance containing methamphetamine, the court should use the entire weight of the mixture or substance or the weight of the pure methamphetamine, whichever is greater. U.S.S.G. § 2D1.1(c) n.* (1989).

despite the fact that most of the liquid was waste material.[3] In doing so, the court explicitly refused to follow *Jennings* and *Rolande–Gabriel. Id.* at 412 n. 5. The *Walker* court reasoned that *Chapman* did not involve methamphetamine; nor did it involve a liquid. *Id.* at 412. Moreover, the court noted that much of the language in *Chapman* actually supports the conclusion that it is rational to consider the total amount of a liquid mixture containing methamphetamine. *Id.*

■ We agree with the Fifth Circuit. The plain and unambiguous language of the Guidelines requires that the entire amount of a mixture or substance containing a detectable amount of methamphetamine be used.[4] In *Chapman,* the Supreme Court applied the plain language of the statute in a more ambiguous context than we face here. Whether Congress intended that blotter paper used to distribute LSD be considered a "mixture or substance" is much less clear from the language of the statute than whether the entire volume of a methamphetamine mixture should be considered. Indeed, in *Chapman,* the Supreme Court expressly distinguished between the statutory treatment of LSD and methamphetamine. *Chapman,* —— U.S. at ——, 111 S.Ct. at 1924; *see Sherrod,* 964 F.2d at 1510.

The Guidelines scheme appears to be consistent with Congress's directive to impose sentences based on quantity rather than purity. *See United States v. Baker,* 883 F.2d 13, 15 (5th Cir.), *cert. denied,* 493 U.S. 983, 110 S.Ct. 517, 107 L.Ed.2d 518 (1989); *see also Chapman,* —— U.S. at ——, 111 S.Ct. at 1925. The Guidelines scheme lessens the

risk of disparity by allowing the sentencing court to consider purity both in deciding where within the guideline range to sentence a defendant and by providing for an upward departure if the mixture is of unusually high purity.[5] *Baker,* 883 F.2d at 15. Thus, because the drug is likely to be more pure, a manufacturer caught with the finished product will not necessarily receive a lesser sentence than one arrested with the same amount of methamphetamine in a solution of greater total weight. *Id.* Finally, unlike a mere packaging agent like the creme liqueur in *Acosta* or the cornmeal in *Robins,* the entire liquid mixture can be said to facilitate the distribution of methamphetamine because the methamphetamine could not have been produced without it. *Robins,* 967 F.2d at 1390.

In short, Innie has failed to convince us that application of the plain language of the Guidelines is irrational. The district court did not err by calculating Innie's offense level based upon the total volume of the liquid mixture containing methamphetamine.

## IV

■ The district court refused to grant Innie a reduction for acceptance of responsibility. Under the Guidelines in effect at the time Innie was sentenced, a reduction for acceptance of responsibility was warranted "if the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct." U.S.S.G. § 3E1.1(a). Whether or not a defendant has accepted responsibility for his crime is a factual determination to which the

---

3. The Fifth Circuit reaffirmed *Walker* in *United States v. Sherrod,* 964 F.2d 1501, 1509–11 (5th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 832, 121 L.Ed.2d 701 (1992) and *cert. dismissed,* —— U.S. ——, 113 S.Ct. 834, 122 L.Ed.2d 111 (1992) and *cert. denied,* —— U.S. ——, 113 S.Ct. 1367, 122 L.Ed.2d 745 (1993) and *cert. denied,* —— U.S. ——, 113 S.Ct. 1422, 122 L.Ed.2d 791 (1993). The First Circuit has also refused to follow *Jennings* or *Rolande–Gabriel. See United States v. Lopez–Gil,* 965 F.2d 1124, 1128–29 (1st Cir. 1992), *op. withdrawn in part on other grounds* (considering net weight of cocaine mixed with fiberglass suitcase material).

4. The November 1, 1989 amendment to § 2D1.1 further undermines Innie's contention that using

the total weight of a liquid mixture containing methamphetamine is inconsistent with the purpose of the Guidelines. Under the version of § 2D1.1 now in effect, the Commission has provided separate offense levels for pure methamphetamine. The Guidelines now require the sentencing court to "use the offense level determined by the entire weight of the mixture or substance or the offense level determined by the weight of the pure ... methamphetamine, whichever is greater." U.S.S.G. § 2D1.1(c) n.*.

5. The 1989 amendment to § 2D1.1 lessens the risk of disparity by providing a separate calculus for pure methamphetamine. *See* U.S.S.G. § 2D1.1(c) n.*; *see also infra,* n. 4.

clearly erroneous standard of review applies. *United States v. Gonzalez*, 897 F.2d 1018, 1019 (9th Cir.1990). "The sentencing judge is in a unique position to evaluate the defendant's acceptance of responsibility. For this reason, the determination of the sentencing judge is entitled to great deference and should not be disturbed on review unless without foundation." *Id.* (quoting U.S.S.G. § 3E1.1, comment. (n. 5)).

Innie argues that his admissions to law enforcement officers at the time of his arrest demonstrate his acceptance of responsibility. It appears that he made voluntary and truthful admissions within the meaning of the commentary to section 3E1.1. U.S.S.G. § 3E1.1, comment. (n. 1(c)). He told the marshals that he was tired of running, admitted to cooking methamphetamine, consented to the search of his room and car, and told the marshals exactly where they would find the guns and the drugs. His admissions were made before the government had proven its case at trial. *Cf. United States v. Restrepo*, 930 F.2d 705, 710 (9th Cir.1991); *see also* U.S.S.G. § 3E1.1, comment. (n. 1(g)) (the timeliness of admissions is relevant to acceptance of responsibility).

 At sentencing, the district court implicitly rejected Innie's contention that his pre-trial admissions demonstrated the acceptance of responsibility, stating:

> He pled not guilty. He tried his case. He was found guilty. During the proceedings with the Probation Officer, he refused to discuss the matter with the Probation Officer. So there is no clear demonstration of recognition and affirmative acceptance of responsibility in any regard.

In response, Innie argues that he was not bound to submit to a presentence review with a probation officer. Moreover, he notes that the presentence report is not binding on the court. He is correct. The sentencing court must use its independent judgment to resolve the issues before it. *See United States v. Belgard*, 894 F.2d 1092, 1099 (9th Cir.), *cert. denied*, 498 U.S. 860, 111 S.Ct. 164, 112 L.Ed.2d 129 (1990). Innie's argument misses the mark, however. Although a district court may not punish a defendant for failing to participate in fact-gathering at a presen-

tence interview or for not pleading guilty, the defendant must carry the burden of demonstrating the acceptance of responsibility. *See United States v. Herrera–Figueroa*, 918 F.2d 1430, 1438 (9th Cir.1990) (Leavy, J., concurring in part and dissenting in part).

 Because of the district court's unique position, its determination regarding acceptance of responsibility is not to be disturbed "unless it is *without foundation.*" *United States v. Aichele*, 941 F.2d 761, 767 (9th Cir.1991) (quotation omitted) (emphasis in original). The district court identified several facts that were inconsistent with contrition. Innie denied his guilt at trial. Although a defendant may manifest a sincere contrition even if he exercises his constitutional right to trial, his decision to put the government to its burden of proof at trial by denying essential elements of guilt may be inconsistent with an acceptance of responsibility. *See* U.S.S.G. § 3E1.1, comment. (n. 2); *see also Restrepo*, 930 F.2d at 710. Moreover, the district court was entitled to consider that Innie refused to discuss the case with the probation officer and did not make a statement evidencing remorse at the sentencing hearing. *See Aichele*, 941 F.2d at 767; *Restrepo*, 930 F.2d at 710; *United States v. Skillman*, 922 F.2d 1370, 1378–79 (9th Cir.1990), *cert. dismissed,* ——— U.S. ———, 112 S.Ct. 353, 116 L.Ed.2d 275 (1991).

 The fact that Innie made inculpatory admissions to the marshals does not necessarily demonstrate that he was remorseful or contrite. Given the standard of review, we cannot conclude that the district court's denial of Innie's request for a two-level reduction for acceptance of responsibility was clearly erroneous.

## V

 The district court sentenced Innie as a career offender under section 4B1.1 of the Guidelines. In doing so, the court assigned Innie a base offense level of 37. According to section 4B1.1,

> [a] defendant is a career offender if (1) the defendant was at least eighteen years old at the time of the instant offense, (2) the instant offense of conviction is a felony

that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

It is undisputed that Innie meets the first two requirements of section 4B1.1. Innie contends, however, that the district court erred by finding that his prior felony conviction as an accessory after the fact to murder for hire was a crime of violence. We review the district court's determination that Innie is a career offender de novo. *United States v. Becker,* 919 F.2d 568, 570 (9th Cir.1990), *cert. denied,* 499 U.S. 911, 111 S.Ct. 1118, 113 L.Ed.2d 226 (1991).

Innie was arrested on February 16, 1989 which, because the crimes were ongoing, was the date of commission of the offenses charged in this case. He was sentenced on March 30, 1992. The version of the Guidelines in effect at the time of Innie's 1989 arrest defined the term "crime of violence" by reference to 18 U.S.C. § 16. Thus, under section 4B1.2, a crime of violence was

(a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 16 (1988); *see also Becker,* 919 F.2d at 569; *United States v. O'Neal,* 937 F.2d 1369, 1374 (9th Cir.1990).

▮ Guideline § 4B1 was amended effective November 1, 1989, subsequent to the date that Innie committed the offenses at issue here. The amendment eliminated all reference to 18 U.S.C. § 16. *See United States v. O'Neal,* 937 F.2d 1369, 1374 n. 8 (9th Cir.1990). The amendment in effect at the time of Innie's sentencing redefined crime of violence to be an offense that

(i) has as an element the use, attempted use, or threatened use of physical force against the person of another, or (ii) is a burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2(1) (1991). "The amendment shifted the emphasis from an analysis of the 'nature' of the crime charged to an analysis of the elements of the crime charged or whether the actual charged 'conduct' of the defendant presented a serious risk of physical injury to another." *United States v. Sahakian,* 965 F.2d 740, 742 (9th Cir.1992). We have since held that, under the current version of the Guidelines, "[i]n determining whether an offense 'involves conduct that presents a serious potential risk of physical injury to another,' U.S.S.G. § 4B1.2(1)(ii), courts may consider the statutory definition of the crime and may also consider the conduct 'expressly charged[ ] in the count of which the defendant was convicted.' U.S.S.G. § 4B1.2, comment. (n. 2)." *United States v. Young,* 990 F.2d 469, 472 (9th Cir. 1993). Because application of the Guidelines in effect at the time of Innie's sentencing would result in a harsher sentence for Innie, the Ex Post Facto Clause prohibits using those Guidelines. *See United States v. Warren,* 980 F.2d 1300, 1304 (9th Cir.1992). For that reason, the government concedes that the applicable Guidelines are those that were in effect at the time the offense was committed.

▮ Under the 1989 Guidelines, we must apply the "so-called 'categorical approach'" to determine whether Innie's predicate conviction as an accessory after the fact to murder for hire was a crime of violence. *See Becker,* 919 F.2d at 570. In doing so, we "do not look to the specific conduct which occasioned [Innie's] conviction, but only to the statutory definition of the crime." *Id.; see also United States v. Selfa,* 918 F.2d 749, 751 (9th Cir.1990) (applying categorical approach); *United States v. O'Neal,* 910 F.2d 663, 667 (9th Cir.1990) (same); *cf. Young,* 990 F.2d at 472 (examining actual charged conduct under *current* Guidelines).

### A

#### i

We begin our inquiry, under subsection (a) of 18 U.S.C. § 16, by asking whether the

predicate offense has as an element the use, attempted use, or threatened use of physical force against the person or property of another.

 This court has defined "an 'element' of a crime" as "a 'constituent part' of the offense which must be proved by the prosecution *in every case* to sustain a conviction under a given statute." *United States v. Sherbondy*, 865 F.2d 996, 1010 (9th Cir.1988) (applying 18 U.S.C. § 924(e)(2)(B)(i)).[6] 18 U.S.C. § 3 provides that "[w]hoever, knowing that an offense against the United States has been committed, receives, relieves, comforts or assists the offender in order to hinder or prevent his apprehension, trial or punishment, is an accessory after the fact." 18 U.S.C. § 3 does not require, as an element, the use, attempted use, or threatened use of physical force against the person or property of another. Nor must the use or threat of force be proven in every case to sustain a conviction as an accessory after the fact. Thus, the accessory offense is not a crime of violence as defined in 18 U.S.C. § 16(a).

### ii

 We next must ask whether, by its nature, the offense involves a substantial risk that physical force against the person or property of another may be used in the course of its commission. 18 U.S.C. § 16(b). As noted above, because we apply the Guidelines in effect prior to the November 1, 1989 amendment, we are prohibited from inquiring into the conduct actually charged. Instead, we may only ask whether, generically, the crime of being an accessory after the fact to an offense against the United States involves a substantial risk that physical force may be used in its commission. We simply cannot say that, by its nature, receiving, relieving, comforting or assisting someone

who has committed an offense against the United States in order to hinder or prevent his apprehension, trial or punishment involves a substantial risk in every case that physical force may be used. *Cf. Becker*, 919 F.2d at 571 n. 5 (in every case of first degree burglary there is a substantial risk force will be used against the person or property of a lawful occupant of the dwelling). Thus, the accessory offense cannot be considered a crime of violence as defined in 18 U.S.C. § 16(b).

### B

 The government argues that we should consider the offense underlying Innie's accessory conviction to be an element of the accessory offense. In other words, the government asks us to consider Innie's predicate conviction to have been as an "accessory after the fact *to murder for hire*" rather than as an "accessory after the fact." Under the government's theory, the statutory definition of the accessory offense includes as an element the violation of the underlying offense. The government's argument has some appeal. Commission of the underlying offense is a prerequisite for conviction as an accessory after the fact. *United States v. Nava–Maldonado*, 566 F.Supp. 1436, 1439 (D.Nev.1983); *see also United States v. Balano*, 618 F.2d 624, 633 (10th Cir.1979), *cert. denied*, 449 U.S. 840, 101 S.Ct. 118, 66 L.Ed.2d 47 (1980). For that reason, an indictment charging one as an accessory after the fact must plead the underlying offense as well as the accessory offense. *See United States v. McLennan*, 672 F.2d 239, 243 (1st Cir.1982).

In this case, the offense underlying Innie's prior conviction as an accessory after the fact was murder for hire in violation of 18 U.S.C. § 1959.[7] Under the government's theory,

---

**6.** To help define what constitutes a "category" of criminal conduct for purposes of the Guidelines, this circuit has looked to cases interpreting the nearly identical language of the Armed Career Criminal Act, 18 U.S.C. § 924. *Becker*, 919 F.2d at 570. Subsection (i) of the Armed Career Criminal Act, 18 U.S.C. § 924(e)(2)(B), is identical to subsection (a) of 18 U.S.C. § 16. Subsection (i) provides that a violent felony must have "*as an element* the use, attempted use, or threatened use of physical force against the person of

another...." 18 U.S.C. § 924(e)(2)(B)(i) (emphasis added). Thus, the language of both sections requires determining the "elements" of a given crime.

**7.** Under 18 U.S.C. § 1959 (formerly § 1952B), it is a federal crime to murder, kidnap, maim, assault with a dangerous weapon, commit assault resulting in serious bodily injury, or threaten to commit a crime of violence, for the receipt

the statutory elements of Innie's conviction would include (1) the commission of a murder for hire in violation of 18 U.S.C. § 1959 by another individual; (2) the defendant's knowledge of that offense; and (3) assistance after the fact by the defendant to prevent the apprehension, trial, or punishment of the offender. *See* 18 U.S.C. §§ 3 and 1959; *see also United States v. Lepanto,* 817 F.2d 1463, 1467 (10th Cir.1987) (defining the elements of the accessory statute). Taking the government's approach, we should then ask whether being an accessory after the fact to murder for hire (a) has as an element the use, attempted use, or threatened use of physical force against the person or property of another or (b) by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of its commission.

▅▅▅ It is not clear whether our previous cases prevent us from employing the government's proposed approach. A violation of 18 U.S.C. § 1959 is not a constituent part of the accessory offense which must be proved by the prosecution in every case to sustain a conviction under the accessory statute; 18 U.S.C. § 3 merely requires proof that *some* federal offense has been committed. Thus, to determine that a prior conviction as an accessory after the fact included the violation of 18 U.S.C. § 1959, we might have to look beyond the certified record of conviction to the charging papers or jury instructions. *See United States v. Preston,* 910 F.2d 81, 87 (3d Cir.1990), *cert. denied,* 498 U.S. 1103, 111 S.Ct. 1002, 112 L.Ed.2d 1085 (1991); *United States v. Taylor,* 882 F.2d 1018, 1030 (6th Cir.1989) (using indictment to determine defendant's prior offense), *cert. denied,* 496 U.S. 907, 110 S.Ct. 2592, 110 L.Ed.2d 273 (1990). We are uncertain, however, whether, under the 1989 Guidelines, we can look to the charging papers and jury instructions to determine the offense underlying an accessory conviction. We certainly are precluded from looking at the actual charged conduct in the particular case. *See Becker,* 919 F.2d at 570; *Selfa,* 918 F.2d at 751; *see also Young,* 990 F.2d at 472 (defining the inquiry into actual charged conduct

as a limited inquiry into the facts charged in the indictment or information). On the other hand, some of our cases suggest that, under the categorical approach, we can look to the charging papers and jury instructions for the limited purpose of determining the nature of a predicate offense where an offense has various permutations. *See United States v. Mendez,* 992 F.2d 1488, 1491 (9th Cir.1993) (deciding whether conspiracy to rob is a crime of violence under section 924(c)); *see also Taylor v. United States,* 495 U.S. 575, 602, 110 S.Ct. 2143, 2160, 109 L.Ed.2d 607 (1990) (in the context of section 924(e), sentencing court can go beyond the mere fact of conviction in a narrow range of cases where the jury was actually required to find all the elements of a violent felony). We leave for another day the question whether we can look to the charging papers to determine the underlying offense to an accessory after the fact conviction, because we conclude below that, even under the government's approach, being an accessory after the fact to murder for hire is not a crime of violence as defined in the 1989 Guidelines.

i

▅▅▅ Under the government's proposed approach, we first must ask whether being an accessory after the fact to murder for hire has, as an element, the use, attempted use, or threatened use of physical force against the person or property of another. Even if the underlying murder for hire offense is considered to be an element of the accessory offense, culpability for the murder is not attributed to the accessory defendant. The accessory defendant is liable for the act of receiving, relieving, comforting, or assisting a murderer *after* the use of force, not for the murderer's use of force. For that reason, an accessory after the fact is not liable as a principal. *Cf.* 18 U.S.C. § 2 (whoever aids, abets, counsels, commands, induces or procures the commission of an offense is punishable as a principal). Thus, being an accessory after the fact to murder for hire does not fit the definition of crime of violence found in subsection (a) of 18 U.S.C. § 16.

of consideration from an enterprise engaged in racketeering activity.

**ii**

■ We next must ask whether being an accessory after the fact to murder for hire, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of its commission. The government contends that the harboring and concealment of a known professional killer necessarily poses a substantial risk of continued violence. On that basis, the government argues that conviction as an accessory after the fact to murder for hire falls within subsection (b) of 18 U.S.C. § 16. We recognize that the situation created by someone convicted as an accessory after the fact to murder for hire includes the potential reactions of law enforcement officials and other third parties. *See United States v. Sherman*, 928 F.2d 324, 328 (9th Cir.) (looking to chance that law enforcement officials will resort to armed response thereby posing risk to security of others), *cert. denied*, —— U.S. ——, 112 S.Ct. 133, 116 L.Ed.2d 100 (1991); *United States v. Leavitt*, 925 F.2d 516, 517 (1st Cir.1991) (defendant, officers, or some other person might have been hurt by officers' response); *United States v. Davis*, 881 F.2d 973, 976 (11th Cir.1989) (victims may react with measures that may well escalate the situation), *cert. denied*, 493 U.S. 1026, 110 S.Ct. 735, 107 L.Ed.2d 753 (1990). Yet, it is far from obvious that, in every case, receiving, relieving, comforting or assisting a "hired" murderer in order to hinder or prevent that murderer's apprehension, trial or punishment, involves a substantial risk that physical force may be used against the person or property of another. Our doubts are confirmed when we compare other crimes considered to be crimes of violence because of the risk of injury they create. *Cf. O'Neal*, 937 F.2d at 1375 (vehicular manslaughter); *Sherman*, 928 F.2d at 327 (armed burglary of commercial premises); *United States v. McDougherty*, 920 F.2d 569, 575 (9th Cir.1990) (robbery), *cert. denied*, 499 U.S. 911, 111 S.Ct. 1119, 113 L.Ed.2d 227 (1991); *Becker*, 919 F.2d at 573 (burglary of a residence during daytime); *United States v. Parson*, 955 F.2d 858, 873 (3d Cir.1992) (reckless endangerment); *Leavitt*, 925 F.2d at 517 (oral threat); *United States v. McVicar*, 907 F.2d 1, 2–3 (1st Cir.1990) (larceny from the person); *United States v. Thompson*, 891 F.2d 507, 511 (4th Cir.1989) (pointing a firearm at a person), *cert. denied*, 495 U.S. 922, 110 S.Ct. 1957, 109 L.Ed.2d 319 (1990). We simply are not persuaded that, in every case, being an accessory after the fact to murder for hire involves a substantial risk that force will be used in the commission of the accessory offense.

**iii**

The government points out that a defendant who conspires to commit a crime of violence or aids and abets a crime of violence has committed a crime of violence. *See Preston*, 910 F.2d at 86–87 (conspiracy to commit robbery); *United States v. Morrison*, 972 F.2d 269, 270–71 (9th Cir.1992) (aiding and abetting malicious destruction). The government argues that being an accessory after the fact to a crime of violence is analogous. However, the offense of being an accessory *after* the fact is clearly different from aiding and abetting. Unlike one who aids or abets a crime of violence, an accessory after the fact does not aid in the commission of the underlying offense. Similarly, unlike one who conspires to commit a crime of violence, an accessory after the fact does not agree to commit the crime of violence. *Cf. Preston*, 910 F.2d at 86 (conspirator must agree to do an unlawful act). The Guidelines now in effect reflect this difference: the Guidelines specifically provide that " 'crime of violence' . . . include the offenses of aiding and abetting, conspiring, and attempting to commit such offenses." U.S.S.G. § 4B1.2, comment. (n. 1); *see also Morrison*, 972 F.2d at 270–71. No mention is made in the Guidelines of the offense of being an accessory after the fact to a crime of violence. In short, the proposed analogy fails.

**C**

Under the Guidelines in effect at the time of Innie's 1989 arrest, the crime of being an accessory after the fact under 18 U.S.C. § 3 was not a crime of violence. Nor are we persuaded that, under the categorical approach, being an accessory after the fact to murder for hire is a crime of violence. Ac-

cordingly, we vacate the district court's determination that Innie was a career offender under the Sentencing Guidelines and remand for resentencing.

## VI

There was sufficient evidence to convict Innie of possession of methamphetamine with intent to distribute. The sentencing judge properly took into account the entire amount of the liquid mixture containing methamphetamine. Denial of a two-level reduction for acceptance of responsibility was not clearly erroneous. The career offender status determination was improper since being an accessory after the fact was not a crime of violence.

AFFIRMED in part, VACATED in part, and REMANDED for resentencing.

WALLACE, Chief Judge, concurring:

I concur in the majority opinion except for section VB. I cannot join in this part of the majority opinion, and concur only in its result.

Our opinion is very narrow: it concerns only the Guidelines in effect at the time of Innie's arrest. Under the categorical approach of those Guidelines, we may "not look to the specific conduct" of which the defendant was convicted, "but only to the statutory definition of the crime." *United States v. Becker*, 919 F.2d 568, 570 (9th Cir.1990), *cert. denied*, 499 U.S. 911, 111 S.Ct. 1118, 113 L.Ed.2d 226 (1991). Innie pleaded guilty to being an accessory after the fact to murder for hire in violation of 18 U.S.C. § 3. This statute provides that "[w]hoever, knowing that an offense against the United States has been committed, receives, relieves, comforts or assists the offender in order to hinder or prevent his apprehension, trial or punishment, is an accessory after the fact." I agree with the majority that, under this statutory definition, the accessory after the fact offense is not a crime of violence. Maj. op. at 851.

Our cases do carve out a limited exception to the general rule that a court may only look to the fact of conviction and the statutory definition of the prior offense. However, the exception is limited to those situations where *the language of the statute itself* defines crimes of both violence and nonviolence. Thus, in *United States v. Selfa*, 918 F.2d 749 (9th Cir.), *cert. denied*, 498 U.S. 986, 111 S.Ct. 521, 112 L.Ed.2d 532 (1990), the district court determined that the defendant's two prior convictions for bank robbery in violation of 18 U.S.C. § 2113(a) constituted crimes of violence. The first paragraph of section 2113(a) prohibits bank robbery committed "by force and violence, or by intimidation" while the second paragraph criminalizes the act of entering or attempting to enter a bank with intent to commit a felony in it. As we discussed in *Selfa*, only the first paragraph describes a crime of violence. *Id.* at 751–52 & n. 2. Nonetheless we upheld the district court's decision to apply U.S.S.G. § 4B1.1 because the presentence report, "based upon a review of relevant portions of the record underlying the prior convictions, including a review of the charging documents, ... showed that this defendant had been convicted of actual bank robbery pursuant to the first paragraph of 18 U.S.C. § 2113(a)." *Id.*; *see also United States v. Mendez*, 992 F.2d 1488, 1490–92 (9th Cir.1993) (*Mendez*) (holding conspiracy to rob in violation of 18 U.S.C. § 1951 a crime of violence for purposes of 18 U.S.C. § 924(c) even though section 1951 also covers conspiracy to extort among other crimes), *cert. denied,* —— U.S. ——, 114 S.Ct. 262, 126 L.Ed.2d 214 (1993). Likewise, in *Taylor v. United States*, 495 U.S. 575, 602, 110 S.Ct. 2143, 2160, 109 L.Ed.2d 607 (1990), the Supreme Court suggested that the

> categorical approach ... may permit the sentencing court to go beyond the mere fact of conviction in a narrow range of cases where a jury was actually required to find all the elements of generic burglary. For example, *in a State whose burglary statutes include entry of an automobile as well as a building,* if the indictment or information and jury instructions show that the defendant was charged only with a burglary of a building, and that the jury necessarily had to find an entry of a building to convict, then the Government should be allowed to use the conviction for en-

hancement [pursuant to 18 U.S.C. § 924(e)].

(Emphasis added.)

18 U.S.C. § 3 does not describe the accessory after the fact crime "using several permutations, any one of which constitutes the same offense." *Mendez*, 992 F.2d at 1490. Rather, the same statutory definition applies to every accessory after the fact conviction regardless of the nature of the underlying federal offense, whether it be murder for hire or tax evasion. Under the categorical approach, therefore, we are barred from going beyond the statutory definition of the offense in determining whether Innie's prior felony conviction as an accessory after the fact to murder for hire was a crime of violence. Indeed, any different interpretation would leave *United States v. Young*, 990 F.2d 469, 472 (9th Cir.1993), *petition for cert. filed*, (U.S. Aug. 19, 1993) (No. 93–5647), superfluous.