**UNITED STATES of America, Plaintiff–Appellee,**

**v.**

**Roderic E. SPRAGUE, Defendant– Appellant.**

**No. 96–10348.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 15, 1997.

Decided Feb. 4, 1998.

Denise Meyer (Project attorney), Dan Roberts and Greg Doll (student interns), Post–Conviction Justice Project, University of Southern California Law School, Los Angeles, CA, for defendant-appellant.

Miquel Rodriguez, Assistant United States Attorney, Sacramento, CA, for plaintiff-appellee.

Before: BROWNING and THOMPSON, Circuit Judges, and MOSKOWITZ, District Judge.[*]

MOSKOWITZ, District Judge:

Appellant Roderic Sprague appeals from an order of the district court denying his motion under 18 U.S.C. § 3582(c)(2) for reduction of sentence. In Sprague's motion for reduction of sentence, he argued that Amendment 484 to the United States Sentencing Guidelines (November 1, 1993), which changed the law governing mixtures of controlled substances with other materials, was applicable to his sentence. The amendment excludes the weight of "materials that must be separated from the controlled substance before the controlled substance can be used," such as packaging materials or waste product, from the calculation of the base offense level under United States Sentencing Guidelines Manual § 2D1.1 ("U.S.S.G."). The district court denied the motion, finding, by a preponderance of the evidence, that the liquid mixtures used by the court in determining the total quantity of methamphetamine were intermediate substances in the methamphetamine production process, not waste materials. Thus, the district court concluded that Amendment 484 did not require reduction of Sprague's sentence. Because Amendment 484 requires the district court to make a determination of the amount of unusable materials that must be separated from the controlled substance before its use, we vacate the decision of the district court and remand for further proceedings.

## BACKGROUND

### A. Sentencing and Appeal

On March 24, 1989, Appellant Sprague was indicted on seven counts relating to his operation of a methamphetamine laboratory on his houseboat. Sprague pled guilty to one count of knowingly and intentionally manufacturing methamphetamine in violation of 21 U.S.C. § 841(a)(1). The Presentence Report, to which Sprague withdrew his objection, recommended a base offense level of 32 because of the quantities of three seized items: two jars containing liquid mixtures in which the presence of methamphetamine was detected and one pound of ephedrine, the precursor chemical to methamphetamine. At sentencing, Sprague also received a two-level enhancement for possession of dangerous weapons, and a two-level reduction for acceptance of responsibility, resulting in an adjusted offense level of 32. Given Sprague's criminal history category of III, the court sentenced Sprague to 151 months custody and 5 years of supervised release.

[*] The Honorable Barry Ted Moskowitz, United States District Judge for the Southern District of California, sitting by designation.

Sprague's sentence was affirmed on November 8, 1990.

## B. Motion for Reduction of Sentence

On December 19, 1995, Sprague filed a motion for reduction of sentence pursuant to 18 U.S.C. § 3582(c)(2) (1994), which provides that a court may reduce a sentence of "a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission ... after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."

Sprague argued that his base offense level was inflated by incorrectly adding to the seized ephedrine the entire weight of the two liquid mixtures found in jars that contained traces of methamphetamine and chloropseudoephedrine, an intermediate compound in the thionyl chloride method for producing methamphetamine which Sprague employed. Because both mixtures contained detectable levels of methamphetamine, the Presentence Report had correctly noted that under the Sentencing Guidelines in effect in 1989, the entire amount of the mixtures was to be used in determining the weight of the controlled substance. U.S.S.G. § 2D1.1, at 2.39 n.* (1988) ("Consistent with the provisions of the Anti–Drug Abuse Act, if any mixture of a compound contains any detectable amount of a controlled substance, the entire amount of the mixture or compound shall be considered in measuring the quantity."); *see Chapman v. United States,* 500 U.S. 453, 456–63, 111 S.Ct. 1919, 1922–26, 114 L.Ed.2d 524 (1991). Thus, the probation officer determined that the liquid mixtures in the two jars had con-

verted weights of 1.9 kilograms and 2.8 kilograms. When added to the 0.45 kilograms of ephedrine, which was converted to 0.36 kilograms of methamphetamine, the Presentence Report concluded that the total weight of actual and potential methamphetamine was 5.1 kilograms. This converted to 10.2 kilograms of cocaine-equivalent drug, *see* U.S.S.G. § 2D1.1, comment. (n. 10) (1988), resulting in a base offense level of 32, *id.* § 2D1.1, at 2.38 (Drug Quantity Table).

Amendment 484 to the Sentencing Guidelines, effective November 1, 1993, amended Application Note 1 to Section 2D1.1. Application Note 1 originally provided that "[m]ixture or substance as used in this guideline has the same meaning as in 21 U.S.C. § 841." The amendment added the exception that "[M]ixture or substance does not include materials that must be separated from the controlled substance before the controlled substance can he used." [1] U.S.S.G.App. C, am. 484 (1995). The Guidelines specifically provide that Amendment 484 should be applied retroactively to determine "whether, and to what extent, a reduction in sentence is warranted" on a motion under Section 3582(c). U.S.S.G. § 1B1.10(a) and (c) (1995); *see United States v. Innie,* 77 F.3d 1207, 1209 (9th Cir.1996).

The district court found that, although the case was "very close to being a tie," Amendment 484 was inapplicable because "[t]he sentence imposed was based on a preponderance of the evidence establishing, among other things, that the solutions ... were an intermediary solution in the clandestine process of methamphetamine manufacturing" containing a detectable amount of methamphetamine. That is, the trial court found that the liquid mixtures were in the process

---

**1.** At the time Sprague's motion was decided (and at present), application Note 1 to U.S.S.G. § 2D1.1 (1995) provided in pertinent part:

"Mixture or substance" as used in this guideline has the same meaning as in 21 U.S.C. § 841, except as expressly provided. Mixture or substance does not include materials that must be separated from the controlled substance before the controlled substance can be used. Examples of such materials include the fiberglass in a cocaine/fiberglass bonded suitcase, beeswax in a cocaine/beeswax statue, and waste water from an illicit laboratory used to

manufacture a controlled substance. If such material cannot readily be separated from the mixture or substance that appropriately is counted in the Drug Quantity Table, the court may use any reasonable method to approximate the weight of the mixture or substance to be counted.

An upward departure nonetheless may be warranted when the mixture or substance counted in the Drug Quantity Table is combined with other, non-countable material in an unusually sophisticated manner in order to avoid detection.

of becoming methamphetamine and were not waste product mixed with traces of methamphetamine.

Sprague filed a notice of appeal on August 2, 1996, and the court entered its order denying his Section 3582(c)(2) motion on August 5, 1996. The Appellant filed objections to the August 5 order and moved to reconsider on October 15, 1996. The district court denied this motion for lack of jurisdiction on November 29, 1996.

## STANDARD OF REVIEW

■■■ The denial of a motion under 18 U.S.C. § 3582(c)(2) is reviewed for abuse of discretion. *United States v. Townsend,* 98 F.3d 510, 512 (9th Cir.1996). "A district court may abuse its discretion if it does not apply the correct law or if it rests its decision on a clearly erroneous finding of material fact." *United States v. Plainbull,* 957 F.2d 724, 725 (9th Cir.1992) (citation omitted), *quoted in Kayes v. Pacific Lumber Co.,* 51 F.3d 1449, 1464 (9th Cir.1995).

## DISCUSSION

### A. Amendment 484

■■■ The arguments to the district court on whether Amendment 484 was applicable to Sprague's sentence focused on whether the liquid mixtures were waste product or intermediary solutions. When the district court found that the mixtures were intermediary solutions, it determined that it was precluded from "reaching the question of . . . what the quantity of the controlled substance would be." In framing the issue as whether the mixtures were waste washings or intermediary solutions, however, the parties argued about a distinction that was relevant only under pre-Amendment 484 law.

In *Chapman,* the Supreme Court held that "[s]o long as [a mixture] contains a detectable amount [of controlled substance], the entire mixture . . . is to be weighed when calculating the [mandatory minimum] sentence" under 21 U.S.C. § 841. 500 U.S. at 459, 111 S.Ct. at 1924. Thus, the Court concluded that because crystals of lysergic acid diethylamide ("LSD") were mixed with the fibers of blotter paper on which it is distributed, the entire weight of the paper and the LSD should be used for sentencing. Several circuits, including ours, subsequently found that the weight of a material mixed with a controlled substance that must be separated from the controlled substance to render the drug useable should not be included in the total weight of "mixtures" or "substances" under 21 U.S.C. § 841 or U.S.S.G. § 2D1.1.[2] In *United States v. Robins,* 967 F.2d 1387, 1389 (9th Cir.1992), we held that the weight of cornmeal mixed with cocaine should not be used in determining the base offense level because the materials were not a "mixture." We reasoned that, although a mixture literally can be any non-homogenous combination of two substances that retain separate identities, the rationale of *Chapman* was that where a material is used to dilute the pure controlled substance or acts as a carrier medium to facilitate its distribution, it is rational to set penalties based on the entire weight of the mixture. 967 F.2d at 1389. The *Chapman* Court, however, did not endorse sentencing on the weight of containers or packaging materials "because those items are . . . clearly not mixed or otherwise combined with the drug." 500 U.S. at 462–63, 111 S.Ct. at 1926. Thus, because the cornmeal was not a carrier medium or cutting agent and had to be separated from the cocaine to render the

---

2. *See United States v. Acosta,* 963 F.2d 551, 553–56 (2d Cir.1992) (weight of creme liqueur in which cocaine dissolved not to be used in sentencing because liqueur was unusable and rendered cocaine unmarketable); *United States v. Rodriguez,* 975 F.2d 999, 1004–07 (3d Cir.1992) (weight of boric acid into which cocaine had been laid but not mixed not to be used in determining weight for sentencing because acid was not cutting agent and did not facilitate distribution); *United States v. Palacios–Molina,* 7 F.3d 49, 53–54 (5th Cir.1993) (weight of liquid in which cocaine mixed not to be used in sentencing because cocaine not marketable until dis-

tilled); *United States v. Jennings,* 945 F.2d 129, 135–37 (6th Cir.1991) (weight of liquid mixture containing methamphetamine and other poisonous chemicals and by-products not to be used in sentencing); *United States v. Johnson,* 999 F.2d 1192 (7th Cir.1993) (weight of liquid containing trace amount of cocaine not to be used in sentencing as liquid was not dilutant or carrier medium and mixture not marketable); *United States v. Rolande–Gabriel,* 938 F.2d 1231, 1237 (11th Cir.1991) (unusable liquids in transport mixture for cocaine not to be included in weight calculation).

cocaine useable, the cornmeal was akin to a packaging agent, and its weight could not be used in sentencing. *Robins,* 967 F.2d at 1389.

From the recognized packaging material exception in *Chapman,* those circuits crafting a "marketable" material approach concluded by analogy that the weight of an unusable material mixed with a controlled substance should not be included in the weight for sentencing because the unusable material, unlike the blotter paper with LSD, would have to be separated from the controlled substance before distribution, sale, and use. It is notable, however, that the marketable material approach did not prevail with regard to the manufacturing of methamphetamine, where the controlled substance must precipitate and be separated from a liquid solution. Instead, courts have generally held that the entire weight of a mixture containing methamphetamine and liquid by-products may be used in sentencing because the mixture is integral to producing the drug. *See United States v. Beltran–Felix,* 934 F.2d 1075, 1076 (9th Cir.1991) (rejecting marketable mixture approach in calculating mandatory minimum sentence where liquid solution contained methamphetamine); *United States v. Innie,* 7 F.3d 840, 845–47 (9th Cir.1993) (following *Beltran–Felix* and affirming use of total weight of liquid mixture containing methamphetamine in sentencing); *United States v. Anderson,* 987 F.2d 251, 258 (5th Cir.1993) (weight of toxic liquid by-products in mixture containing methamphetamine includible in weight for sentencing); *see also United States v. Richards,* 87 F.3d 1152, 1157 (10th Cir.1996) (en banc) (entire weight of mixture of liquid by-products and methamphetamine to be used for mandatory minimum sentence). *But see Jennings,* 945 F.2d at 135–37.

The Sentencing Commission adopted the marketable material approach for calculation of base offense levels under the Guidelines in 1993 with Amendment 484. In so doing, it made no distinction between mixtures containing methamphetamine and those containing other controlled substances, and it focused on the composition of those mixtures, not on generalizations as to their identities (e.g., "packaging material" or "waste product"). Amendment 484 clarifies the definitions of "mixture" and "substance" as they are used in the Guidelines by providing that for the purposes of calculations of base offense levels, they do not include those "materials that must be separated from the controlled substance before the controlled substance can be used." The weight of a packaging material to which a controlled substance is bonded, such as "fiberglass in a cocaine/fiberglass bonded suitcase" or "beeswax in a cocaine/beeswax statue," U.S.S.G. § 2D1.1, comment (n.1), would be excluded from the base offense level calculation because the packaging material must be separated from the drug to render it useable. Likewise, the weight of waste washings in a mixture containing only trace amounts of a controlled substance would be excluded for purposes of base offense level calculation to the extent that it is material that must be separated from the controlled substance to render it useable. On the other hand, the weight of a consumable cutting or diluting agent used to increase the total amount of a marketable controlled substance would not be excluded as it need not be separated to render the drug useable. Amendment 484 relates to materials that must be removed from the controlled substance mixture before it can be distributed. Packaging materials and waste washings are only two examples of materials that must be removed. We do not read Amendment 484 and U.S.S.G. § 2D1.1 Application Note 1 as limited to these two examples.

The Sentencing Commission's comments to Amendment 484 discuss its application to methamphetamine laboratories and make clear the intent of the Commission to exclude from the weight for base offense level purposes all liquids that must be removed in the processing stage. The Commission noted that the Amendment applies to cases involving

[t]he waste produced from an illicit laboratory used to manufacture a controlled substance or chemicals confiscated before the chemical processing of the controlled substance is completed. The waste product is typically water or chemicals used to either remove impurities or form a precipitate (the precipitate, in some cases, being the controlled substance). Typically, a small

amount of controlled substance remains in the waste water; often this amount is too small to quantify and is listed as a trace amount (no weight given) in DEA reports. In these types of cases, the waste product is not consumable. The chemicals seized before the end of processing are also not usable in that form because further processing must take place before they can be used.[3]

The inquiry under Amendment 484 is not whether the liquid mixtures seized from Sprague's houseboat were waste product or intermediary solutions. Rather, what matters is the amount of material in the mixtures that had to be separated from the methamphetamine before it could be used.[4] *See United States v. Jackson,* 115 F.3d 843, 848 (11th Cir.1997) (where mixture contained over 1000 grams of sugar and 10 grams of cocaine, Amendment 484 applied and weight of sugar had to be excluded from sentencing calculation); *United States v. Carter,* 110 F.3d 759, 761–62 (11th Cir.1997) (on motion for reduction of sentence, district court should determine weight of water in marijuana too wet to consume). Sprague offered expert testimony at the hearing below that even if the liquid mixtures were intermediary solutions, other materials used in the thionyl chloride method, such as palladium black and alcohol or methanol, would have been present in the liquids and would have had to have been evaporated or filtered out to isolate the crystallized methamphetamine hydrochloride. If the district court finds that chemicals were in the solutions that must be separated by evaporation, filtering or other means prior to

use, then Amendment 484 applies. To determine the appropriate base offense level in light of Amendment 484, the district court must then determine the weight of any materials that had to be separated from the methamphetamine prior to its use. The district court must subtract their weight from the total weight of the mixtures in order to determine the weight of the methamphetamine mixture and resulting base offense level. Because the district court made no findings as to the composition of the mixtures, we vacate the order of the district court to allow it to properly apply Amendment 484 or alternatively calculate the base offense level by other evidence.[5]

**B.  Burden of Proof**

■ We note that in a typical motion under 18 U.S.C. § 3582(c), the moving party can clearly show that his or her "term of imprisonment [is] based on a sentencing range that has subsequently been lowered by the Sentencing Commission," and the district court is then empowered to undertake the appropriate review to determine if reduction in sentence is warranted. Thus, the issue of who bears the burden of proof on such a motion is rarely reached. Here, where the sentencing range applicable to Sprague has been lowered only if Amendment 484 is applicable to the liquid mixtures, we believe that there is a shifting burden. Initially, the movant must show that the retroactive sentencing guideline amendment, such as Amendment 484, is applicable to the challenged sentence. This he or she may do under

---

3. We noted in *United States v. Innie,* 77 F.3d at 1209, that Amendment 484 changed the prior law of our circuit.

4. Our holding today is based on a reading of Amendment 484 to the Guidelines and is applicable to calculations under the Guidelines. Although other courts have employed the marketable material approach to exclude materials that must be separated from the controlled substance from the calculation of mandatory minimum sentences under 21 U.S.C. § 841, *see supra* note 2, our decision in *Beltran–Felix* rejected the marketable material approach as to the statutory mandatory minimum calculation in the context of liquid mixtures containing detectable amounts of methamphetamine. We held that a defendant should be given the mandatory minimum sentence under Section 841 based on the entire

weight of a liquid solution containing methamphetamine and by-products of the production process. 934 F.2d at 1076. We are not asked today to revisit the mandatory minimum sentence calculation under the statute in light of Amendment 484. Our holding relates only to calculations of Guideline base offense levels. *See Neal v. United States,* 516 U.S. 284, 116 S.Ct. 763, 133 L.Ed.2d 709 (1996) (noting inconsistency between definition of mixture under Section 841 and 1993 Amendment to Guidelines as to LSD); *United States v. Richards,* 87 F.3d 1152 (10th Cir.1996)(en banc)(holding definition of mixture as to methamphetamine different under Section 841 and U.S.S.G. § 2D1.1).

5. The district court may, of course, consider other methods of calculating the base offense level, as noted below.

Amendment 484 by showing, by a preponderance of the evidence, that the mixture or substance used in sentencing contained materials that must be separated to render the controlled substance useable.

■ While we note that Sprague's expert offered an unchallenged description of the thionyl chloride method, in which solvents and other materials are present until they are filtered out and the crystallized methamphetamine hydrochloride is isolated, we leave to the district court on remand the question of whether Sprague has met his initial burden. If Sprague has shown that Amendment 484 is applicable, the district court must undertake its review under 18 U.S.C. § 3582 by finding the weight of the useable controlled substance in the liquid mixtures. Since the district court, in deciding whether, and to what extent, a reduction in sentence is warranted, must consider what sentence it would have imposed had Amendment 484 been in effect at the time the defendant was sentenced, U.S.S.G. § 1B1.10(b), the burden of proof shifts to the government to establish the base offense level, that is, the weight of the controlled substance. *See, United States v. Howard,* 894 F.2d 1085, 1090 (9th Cir. 1990).

## C. Factors to Consider on Remand

We recognize, as did the district court, that it may be difficult for the Government to carry its burden of showing the quantity of controlled substance present because, under the law of this Circuit, it was not necessary prior to Amendment 484 to test for the exact composition of mixtures with traces of methamphetamine. *See Beltran–Felix,* 934 F.2d at 1076. Thus, such analysis will often not have been undertaken while the evidence still existed. The district court may employ alternative means for determining the base offense level "consistent with applicable policy statements of the Sentencing Commission," 18 U.S.C. § 3582(c)(2), without the necessity of calculating the weight of the unusable liquid. For example, the court may approximate the quantity of controlled substance by using its best estimate of the production capability of the laboratory

where "the amount seized does not reflect the scale of the offense." *See* U.S.S.G. § 2D1.1, comment. (n.12) (1995).[6]

■ On remand, if the district court's determination of the base offense level again centers on the weight of the useable methamphetamine in the containers it may consider the supplemental declaration by the defendant's expert, Dr. Ellern. Even though the district court thought the case was very close, it did not review this additional declaration because it properly held that it was without jurisdiction to consider Appellant's motion for reconsideration, of which the declaration was a part, as a notice of appeal had been filed two months earlier. The district court may now consider whether that declaration has any effect on the calculation of the base offense level.

## CONCLUSION

We have not previously interpreted Amendment 484 and its application to methamphetamine laboratory cases in a motion for reduction of sentence under 18 U.S.C. § 3582. We now hold that, once the movant has carried his burden of showing that the sentence imposed was based on the entire weight of a mixture containing materials that must be separated from the controlled substance to render it usable, Amendment 484 applies, and a district court must exclude the weight of any non-usable materials from the total weight of the mixture in calculating the base offense level. The Government bears the burden of showing the weight of the controlled substance for purposes of determining the base offense level. Finally, the sentence should be calculated as if the amendment had been in effect at the time of sentencing, and the district court may employ alternative means for determining the base offense level as allowed by the Guidelines. We remand for further proceedings consistent with this opinion.

VACATED and REMANDED.

---

6. The government contends that the original sentence was based on the production capability of Sprague's lab. Our reading of the record reveals that while the sentencing judge indicated that he could consider the lab's capability, he did not and relied instead on the weight of the mixtures.