# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-1332
_____

United States of America

*Plaintiff - Appellee*

v.

Ronnie Joe Benson

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

_____

Submitted: September 20, 2012
Filed: May 29, 2013

_____

Before RILEY, Chief Judge, SMITH and COLLOTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Ronnie Joe Benson was convicted in 1997 of conspiracy to distribute cocaine and cocaine base, commonly known as "crack cocaine," and possession with intent to distribute cocaine, in violation of 21 U.S.C. §§ 846 and 841(a)(1). Benson's offense conduct included distribution of cocaine, cocaine base, and marijuana. When a defendant traffics in multiple controlled substances, the sentencing guidelines

provide for a conversion of each drug to "marijuana equivalency" based on ratios set forth in the guidelines. USSG § 2D1.1, comment. (n.8(D)). According to the presentence investigation report, which relied on testimony presented during trial to calculate drug quantities, Benson was accountable for 15,325.48 kilograms of marijuana equivalent.

At Benson's sentencing hearing in October 1997, the district court[1] asked whether Benson's counsel had any objections to the total marijuana equivalent in the presentence report. Benson's counsel replied that he had calculated "an amount of 14,000 kilograms of [marijuana] equivalent," which also fell within the relevant guideline range of 10,000 to 30,000 kilograms. The district court adopted the drug quantity calculations in Benson's presentence report and found that Benson was accountable for 15,325.48 kilograms of marijuana equivalent. This quantity established a base offense level of 36 under the guidelines. A two-level adjustment for obstruction of justice increased Benson's total offense level to 38, and his criminal history category was V. The district court calculated a guideline range of 360 months' to life imprisonment, and sentenced Benson to concurrent sentences of 360 months' imprisonment on the conspiracy charge and 51 months' imprisonment on the distribution charge. This court affirmed Benson's conviction and sentence. *United States v. Sanders*, 168 F.3d 496 (8th Cir. 1998) (unpublished).

In 2008, the district court reduced Benson's sentence pursuant to 18 U.S.C. § 3582(c)(2) and USSG § 1B1.10. Amendment 706 to the guidelines changed the base offense levels for cocaine base, and thus changed the amount of marijuana equivalent for which a trafficker of cocaine base was accountable. The district court determined that under the amendment, the total quantity of cocaine, cocaine base, and marijuana for which Benson was accountable "would have fallen below 10,000

---

[1]The Honorable Billy Roy Wilson, United States District Judge for the Eastern District of Arkansas.

kilograms of marijuana equivalent," and that his base offense level should be reduced to 34. *See* USSG § 2D1.1(c)(3). The district court calculated an amended guideline range of 292 to 365 months' imprisonment and resentenced Benson to 292 months' imprisonment. This court affirmed the district court's order. *United States v. Benson*, 329 F. App'x 37, 38 (8th Cir. 2009).

In November 2011, Benson moved to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(2) and USSG § 1B1.10(a), based on Amendments 750 and 759 to the sentencing guidelines. The district court denied the motion on November 16, 2011, concluding that Benson "presented no evidence to support a finding that he is responsible for" a quantity of marijuana equivalent that would reduce his guideline range under the amendments. Benson moved for reconsideration, asserting that the district court should have made a finding "regarding where and how far below 10,000 kilograms [his] marijuana equivalent fell." The district court denied Benson's motion for reconsideration for the reasons stated in its previous order. Benson's motion for reconsideration preserved his objection to the district court's ruling. *Cf. United States v. Burrell*, 622 F.3d 961, 965-66 (8th Cir. 2010).

Benson now appeals the district court's refusal to reduce his sentence based on Amendments 750 and 759. Whether Benson is entitled to a reduction based on those amendments depends on whether the most recent change in the base offense levels for trafficking in cocaine base reduced the total amount of marijuana equivalent for which Benson was accountable at sentencing to below 3,000 kilograms. An amount below 3,000 kilograms would reduce Benson's base offense level to 32. *See* USSG § 2D1.1(c)(4). In the district court, however, Benson presented no evidence, and directed the court to no evidence in the record, that showed he was accountable for fewer than 3,000 kilograms of marijuana equivalent. Benson now concedes that the record before the district court did not reflect what proportion of the drug quantity for which he was accountable in 1997 consisted of cocaine base, cocaine, and marijuana, respectively. Even on appeal, Benson still has not proffered a theory under which the

evidence of record could support a finding of fewer than 3,000 kilograms of marijuana equivalent.

"The guidelines contemplate that the government has the burden of proving the applicability of sections which would enhance the offense level and the defendant has the burden of proving the applicability of guideline sections which would reduce the offense level." *United States v. Dinges*, 917 F.2d 1133, 1135 (8th Cir. 1990) (internal quotation omitted). Benson was the movant seeking to reduce the offense level pursuant to USSG § 1B1.10. If there is a failure of proof, then his motion fails. *United States v. Hardiman*, 469 F. App'x 476, 477-78 (7th Cir. 2012) (concluding that it is not an abuse of discretion to deny a § 3582(c) motion if "the dearth of specifics in the record preclude[s] a reduction"); *United States v. Wingo*, 429 F. App'x 549, 551 (6th Cir. 2011) (holding that movant was ineligible for relief under § 3582(c) because the record did not include specific drug quantities that showed eligibility, and movant cited no authority that § 3582(c) "permits a new sentencing hearing—nineteen years after conviction—to discover whether a defendant may be eligible for discretionary relief"); *cf. United States v. Adkins*, 466 F. App'x 302, 303-04 (4th Cir. 2012) (remanding for additional findings on quantity where district court determined that quantity of crack cocaine recommended in the presentence report should be reduced by about seven grams from 31.59 grams, but ultimately stated only that the quantity was between 20 and 35 grams, so that the precise amount was ambiguous).

The Ninth Circuit did state summarily in *United States v. Sprague*, 135 F.3d 1301 (9th Cir. 1998), that once a defendant shows that a retroactive guideline amendment "is applicable," the burden of proof "shifts to the government to establish the base offense level, that is, the weight of the controlled substance." *Id.* at 1307. No other circuit has adopted this view, however, and the Supreme Court recently made clear that § 3582(c)(2) does not authorize a "plenary resentencing proceeding," but permits "only a limited adjustment to an otherwise final sentence." *Dillon v. United States*, 130 S. Ct. 2683, 2690-91 (2010). Benson was free to present

information from the probation office about drug quantity values, or to argue his case for a reduction based on the trial transcript and other records of the original sentencing. But it is not the government's burden—some sixteen years after the case was closed—to prove a substance-by-substance breakdown of the total drug quantity found by the court in 1997 or to demonstrate the inapplicability of § 1B1.10(a). If it were possible to reconstruct the drug-quantity calculation based on the trial testimony of witnesses who purchased drugs, then Benson should have performed the calculation in support of his motion, or at least in support of his appeal, but he failed to do so.

Benson contends that the district court abused its discretion by failing to calculate a new marijuana equivalent under the amended guidelines. To be sure, USSG § 1B1.10(b)(1) directs the district court to "determine the amended guideline range that would have been applicable to the defendant" under the new amendment, *see Dillon*, 130 S. Ct. at 2691, but this injunction applies only after the court finds that the guideline range applicable to the defendant has subsequently been lowered as a result of the amendment. USSG § 1B1.10(a)(1), (a)(2)(B). Section 1B1.10(b)(1) does not relieve the movant of the burden to prove his case, or impose on a district judge an obligation akin to that of an administrative law judge to develop the record in a non-adversarial proceeding. *Cf. Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000). The guidelines also direct a district court to "*[d]etermine* the base offense level," to "*apply* any appropriate specific offense characteristics," and to "*[d]etermine* the defendant's criminal history category," USSG § 1B1.1(a)(2), (6) (emphases added), but these provisions do not require the court to develop evidence in support of findings on aggravating factors if the government fails to produce it. The district court here correctly found that Benson failed to show that the guideline range applicable to him had subsequently been lowered as a result of Amendments 750 and 759. The district court thus properly denied Benson's motion based on a failure of proof, because Benson "presented no evidence to support a finding that he is responsible for less than 3,000 kilograms of marijuana equivalent."

* * *

The order of the district court is affirmed.

SMITH, Circuit Judge, dissenting.

I respectfully dissent from the majority's affirmance of the district court's denial of Benson's motion to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(2). "Because the record is insufficient to determine [Benson's] eligibility for a sentence reduction," I would vacate the district court's order and "remand with instructions for the district court to make additional findings as to the amount of crack cocaine attributable to [Benson] and, based on that finding, determine anew whether [Benson] can or should benefit from Amendment 750." *Adkins*, 466 F. App'x at 303–04.

Section 3582(c)(2) of 18 U.S.C. "requires the court to follow the Commission's instructions in § 1B1.10 to determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized." *Dillon*, 130 S. Ct. at 2691. Under U.S.S.G. § 1B1.10(b)(1), the district court must "begin by 'determin[ing] the amended guideline range that would have been applicable to the defendant' had the relevant amendment been in effect at the time of the initial sentencing." *Id*. (alteration in original) (quoting U.S.S.G. § 1B1.10(b)(1)). After calculating the amended Guidelines range, "§ 3582(c)(2) instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction . . . is warranted in whole or in part under the particular circumstances of the case." *Id*. at 2692. But a "court[] generally may 'not reduce the defendant's term of imprisonment under 18 U.S.C. § 3582(c)(2) . . . to a term that is less than the minimum of the amended guideline range' produced by the substitution." *Id*. at 2691 (second alteration in original) (quoting U.S.S.G. § 1B1.10(b)(2)(A)). The court must also consider the following factors in deciding "whether and to what extent a reduction in sentence is warranted": "'the nature and seriousness of the danger to any person or the community

-6-

that may be posed by a reduction in the defendant's term of imprisonment,' U.S.S.G. § 1B1.10(b) cmt. n.1(B)(ii), and . . . 'post-sentencing conduct of the defendant,' *id*. at cmt. n.1(B)(iii)." *Burrell*, 622 F.3d at 964.

"We review a district court's decision under § 3582(c)(2) to reduce a sentence and the extent of any reduction for an abuse of discretion." *Id*. But "[w]e review de novo the district court's determination that [Benson] was not eligible for a sentence reduction under 18 U.S.C. § 3582(c)(2)." *United States v. Browne*, 698 F.3d 1042, 1045 (8th Cir. 2012).

"[D]rug quantity findings are a predicate to . . . eligibility for a sentence modification . . . ." *Wingo*, 429 F. App'x at 551. "[T]he absence of any drug quantity findings means that the district court cannot follow the strictures of the mandatory Guidelines governing § 3582(c)(2) sentence modifications." *Id*. at 550 (citing U.S.S.G. § 1B1.10; *Dillon*, 130 S. Ct. at 2691–92).

Although district courts may not "make findings *inconsistent with* that of the original sentencing court" in § 3582(c)(2) proceedings, they are not prohibited from "making new findings that are supported by the record and not inconsistent with the findings made in the original sentencing determination." *United States v. Duncan*, 639 F.3d 764, 768 (7th Cir. 2011) (quotations and citations omitted) (holding that "[t]he record provide[d] more than ample evidence" to support the district court's finding that the defendant "was accountable for at least 4.5 kilograms of crack cocaine" based on "the factual bases underlying [the defendant's] offense" and the defendant's failure to "object to the PSR at sentencing," which provided that the defendant was "responsible for at least 137 kilograms of crack cocaine"). "Indeed, new findings are often necessary where . . . retroactive amendments have altered the relevant drug-quantity thresholds for determining a defendant's base offense level." *United States v. Davis*, 682 F.3d 596, 612 (7th Cir. 2012). When ruling on a defendant's § 3582(c)(2) motion, "a district court may consider the record as a whole, including the defendant's

motions, the government's responses, and any addenda to the PSRs explaining the scope of a drug trafficking conspiracy before reaching a conclusion on the drug quantity attributable to a defendant." *Id.*

Here, Benson represented in his motion to reduce his sentence that "Amendment 750 (parts A and C only) to the Sentencing Guidelines' Drug Quantity Table in § 2D1.1 [was] *applicable* to [him]" and "that, based on the quantity of drugs, a four-level reduction to Offense Level 32 is appropriate, or, in the alternative, a guideline range of 188–235 months' imprisonment." (Emphasis added.) Benson represented that he was "*eligible for a reduction of his sentence* by retroactive application of Amendment 750 (parts A and C only) pursuant to 18 U.S.C. § 3582(c) and recently amended Policy Statement § 1B1.10 (effective November 1, 2011)." (Emphasis added.) Following the district court's denial of his motion, Benson argued in his motion for reconsideration that he "*f[ell] within the 500 grams to 839 grams*, which is the overlap between the old and new guidelines." (Emphasis added.) He reasoned that "if the [c]ourt found in 2008 that [he] fell below the 10,000 kilogram marijuana equivalent mark, the [c]ourt was necessarily also making a finding in 2008 that [he] fell within 500 grams, but less than 1.5 kilograms of crack cocaine."

Under *Dillon*, the district court was required to determine what Benson's Guidelines range would have been had Amendment 750 been in effect at his original sentencing. *See Dillon*, 120 S. Ct. at 2691. This necessarily involves a determination of the amount of cocaine base attributable to Benson. *See Wingo*, 429 F. App'x at 551. Here, ¶¶ 8, 14, and 19 of the PSR provide that Benson was responsible for 15,325.48 kilograms of marijuana equivalent. At sentencing, although Benson argued that his drug-quantity calculation was 14,000 kilograms of marijuana equivalent, the district court "accept[ed] the amounts . . . set forth in the presentence report." Because this amount was within 10,000 and 30,000 kilograms of marijuana equivalent, the court calculated a base offense level of 36. Thereafter, in granting Benson's first § 3582 motion based on Amendment 706, the district court determined that Benson's "total

weight would have fallen below 10,000 kilograms of marijuana equivalent, and that he was entitled to a 2-point reduction, which made his new base offense level a 34."

The drug-quantity amount set forth in the PSR, which the district court adopted, failed to break down what amounts of powder cocaine, cocaine base, and marijuana were used in the calculation to determine the marijuana equivalency. The PSR only provides that Benson was "a source of cocaine, crack, and marijuana," "suppl[ying] large quantities of cocaine to Harold Barbee and varying quantities to others." He also "supplied crack and marijuana to others." And, as Benson admitted in his motion for reconsideration, in granting his first § 3582 motion, the district court never made "a judicial finding . . . regarding *where and how far below* 10,000 kilograms Defendant's marijuana equivalent fell."

The record contains evidence from which the district court could determine the amount of cocaine base attributable to Benson. *See Duncan*, 639 F.3d at 767–68; *Davis*, 682 F.3d at 612. For example, the court could reconstruct the drug-quantity calculation based upon trial testimony of drug purchases of witnesses, such as Harold Barbee, Keith Dunbar, Anthony Black, Keith Hawkins, and Michael Hutton.

The record does not show whether the district court calculated Benson's amended Guidelines ranges as if Amendment 750 had been in effect at the time of his original sentencing. *See Dillon*, 130 S. Ct. at 2691. Such a determination would necessarily involve a drug-quantity finding of how much cocaine base was attributable to Benson. *Wingo*, 429 F. App'x at 551. Despite Benson's representation in his motion that he was eligible for a sentence reduction, the district court denied the § 3582(c)(2) motion because Benson "presented no evidence to support a finding that he is responsible for less than 3,000 kilograms of marijuana equivalent." The district court thus concluded that neither Benson's "base offense level nor guideline range changed as a result of Amendment 750." But crediting the government's representation at the original sentencing that witness testimony establishes the drug-quantity amounts, I

cannot infer that "the district court may have felt that it was simply unable to do the 'obligatory math.'" *See Hardiman*, 469 F. App'x at 478 (quoting *Wingo*, 429 F. App'x at 551).

On remand, the district court could find that the record—specifically, witness testimony—sets forth sufficient information to confirm how much cocaine base is attributable to Benson and ultimately whether he is eligible for a sentence reduction. But, it could also conclude that the record is insufficient to establish the amount of cocaine base attributable to the defendant and therefore that it is "unable to do the 'obligatory math.'" *Id.* (quoting *Wingo*, 429 F. App'x at 551).

"Because the record is insufficient to determine [Benson's] eligibility for a sentence reduction," I would vacate the district court's order and "remand with instructions for the district court to make additional findings as to the amount of crack cocaine attributable to [Benson] and, based on that finding, determine anew whether [Benson] can or should benefit from Amendment 750." *Adkins*, 466 F. App'x at 303–04.

_____